UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TANYA A.

    *Plaintiff,*

        v.

FRANK BISIGNANO, Commissioner of the
Social Security Administration,

    *Defendant.*

Case No. 1:24-cv-02975

Hon. Beth W. Jantz

**MEMORANDUM OPINION AND ORDER**

This action was brought under 42 U.S.C. §405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Tanya A.'s[1] application for supplemental security income (SSI). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. §636(c). For the reasons stated below, Plaintiff's Motion to Reverse the Final Decision of the Acting Commissioner of Social Security (Dkt. 17) is DENIED, and the Commissioner's request to affirm the decision (Dkt. 23 at 1) is GRANTED. The Commissioner's decision is affirmed.

**BACKGROUND**

On September 29, 2021, Tanya A. filed applications for disability insurance benefits (DIB) and SSI, alleging disability beginning January 1, 2014. *See* Certified Admin. Record (R.) 214–26 (Dkt. 11). She later amended her alleged disability onset date to January 20, 2020. *See* R. 243; Dkt. 18 at 1 n.1. This amendment made her ineligible for DIB, leaving only her claim for SSI. R. 16–17; Dkt. 18 at 1 n.1. The Social Security Administration denied Tanya's claim initially on March

---

[1] In accordance with Internal Operating Procedure 22, Privacy in Social Security Opinions, the Court refers to Plaintiff by her first name and the first initial of her last name.

23, 2022, and upon reconsideration on August 30, 2022. R. 16. At Tanya's request, an Administrative Law Judge (ALJ) conducted a hearing on June 22, 2023. *See* R. 39–79. The ALJ denied Tanya's claim on August 25, 2023. *See* R. 13–31. The Appeals Council denied Tanya's request for review on February 14, 2024, R. 1–4, making the ALJ's decision the final decision of the Commissioner, reviewable by the District Court under 42 U.S.C. §405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

The ALJ's opinion followed the five-step analytical process required by 20 C.F.R. §416.920. *See* R. 17–31. The ALJ found at Step 1 that Tanya had not engaged in substantial gainful activity since the alleged onset date. R. 18. At Step 2, the ALJ found that she had severe impairments in the form of "degenerative joint disease of the left shoulder, degenerative disc disease of the cervical and lumbar spine, bipolar disorder, post traumatic stress disorder, menopausal syndrome, and obesity." R. 19. At Step 3, the ALJ concluded that Tanya's impairments, alone or in combination, did not meet or medically equal one of the Social Security Administration's listings of impairments. S*ee* R. 19–24. Specifically, the ALJ concluded that Tanya's depression did not meet the criteria of Listing 12.04, *see* R. 22–24, and that her anxiety did not meet the criteria of Listing 12.06, *see* R. 19.[2] Before Step 4, the ALJ determined that Tanya had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. §416.967(b), except she could "lift/carry 20 pounds occasionally and 10 pounds frequently," among additional physical limitations. R. 24. Additionally, the ALJ determined that Tanya was able to "perform simple, routine tasks and simple work-related decisions" and "occasionally interact with supervisors, coworkers, and the public." R. 24. At Steps 4 and 5, the ALJ concluded that Tanya is unable to perform any

---

[2] The ALJ also concluded that Tanya's degenerative joint disease of the left shoulder did not meet the criteria of Listing 1.18, and that her post-traumatic stress disorder did not meet the criteria of Listing 12.15, *see* R. 22–24, but Tanya does not challenge those conclusions in this appeal.

past relevant work, but that there were jobs that existed in significant numbers in the national economy that Tanya could perform, such as "marker," "folder," and "classifier." *See* R. 30–31. The ALJ then concluded that Tanya was not disabled under the Social Security Act. R. 31.

## DISCUSSION

### I.      Standard of Review

The Court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence. *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024). Substantial evidence "'means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019)). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014). While reviewing the Commissioner's decision, the Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Warnell*, 97 F.4th at 1052–53 (quoting *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021)). On the other hand, the Court cannot let the Commissioner's decision stand if it lacks sufficient evidentiary support, an adequate discussion of the issues, or is undermined by legal error. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also* 42 U.S.C. §405(g).

In support of her request for reversal, Tanya argues that the ALJ: (1) erred in finding that her impairments did not meet or equal Listings 12.04 and 12.06; (2) made a flawed RFC assessment that improperly discounted the opinion of William Lopez, M.D., failed to account for her pain complaints, and impermissibly focused on her decision to discontinue a certain medication; and (3) impermissibly omitted Dr. Lopez's five-pound lifting restriction from the hypotheticals

posed to the vocational expert. For the reasons that follow, the Court concludes that the ALJ's decision is supported by substantial evidence.

## II.     The ALJ's Step 3 Analysis

Tanya first challenges the ALJ's Step 3 conclusions. At Step 3, an ALJ considers whether a claimant meets or equals an impairment found in one of the Listings. *Wilder v. Kijakazi*, 22 F.4th 644, 651 (7th Cir. 2022). The Listings contain impairments that are "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." *Id.* (citing 20 C.F.R. §404.1525(a)). An individual who satisfies the criteria of a Listing is presumed to be disabled. *Id.* To meet a Listing is a "very high bar." *Garza v. Kijakazi*, No. 21-2164, 2022 WL 378663, at *2 (7th Cir. Feb. 8, 2022). The claimant has the burden of offering evidence that they meet a Listing. *Richardson v. Kijakazi*, No. 22-2746, 2023 WL 4103000, at *2 (7th Cir. June 21, 2023). If an ALJ "believes that the evidence already received in the record does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment, the adjudicator is not required to articulate specific evidence supporting his or her finding." *Wilder*, 22 F.4th at 653 (quoting Social Security Ruling 17-2p, 2017 WL 3928306, at *4 (S.S.A. Mar. 27, 2017)).

Tanya argues that the ALJ erred in concluding that her mental impairments did not meet or equal Listings 12.04 (covering depressive, bipolar, and related disorders) or 12.06 (covering anxiety and obsessive-compulsive disorders). Dkt. 18 at 3–13. The criteria for each of these Listings consist of three paragraphs, designated A, B, and C. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§12.04, 12.06. For each Listing, a claimant's mental impairment must satisfy the criteria of Paragraph A and the criteria of either Paragraph B or C. *See id.* Tanya challenges the ALJ's determinations as to each Paragraph.

### A.      Paragraph A Criteria

To satisfy the Paragraph A criteria, a claimant must show that the medical criteria for the Listing is present in the medical evidence. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.00(A)(2)(a). The parties do not dispute that Tanya satisfied the Paragraph A criteria for Listing 12.04, which requires medical documentation of depressive disorder or bipolar disorder. *See id.* at §12.04(A); Dkt. 18 at 4–5; Dkt. 23 at 3–4 n.3. Thus, the Court need not address that criteria. *See Sheralyn B. v. Kijakazi*, No. 22-cv-50280, 2023 WL 6290588, at *3 n.5 (N.D. Ill. Sept. 27, 2023) ("The Commissioner does not argue that Plaintiff fails to meet the paragraph A criteria for the listings at issue. Accordingly, this Court need not address the paragraph A criteria." (citations omitted)).

Tanya challenges the ALJ's conclusion that she does not satisfy the Paragraph A criteria of Listing 12.06. *See* Dkt. 18 at 5–6; Dkt. 23 at 4 n.3. Ultimately, though, the Court need not resolve this issue. Even if a claimant satisfies the Paragraph A criteria, she also must satisfy either the Paragraph B or Paragraph C criteria. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§12.04, 12.06. As discussed below, Tanya fails to establish any reversible error in the ALJ's Paragraph B and C analyses, so even assuming she could establish the Paragraph A criteria for Listing 12.06, her Step 3 argument would remain unavailing. *See Mark H. v. Kijakazi*, No. 20-cv-07726, 2022 WL 4329114, at *9 (N.D. Ill. Sept. 19, 2022) ("Here, even assuming Claimant met the threshold paragraph A requirement for these listings, his step three argument fails because the ALJ's paragraph B and C findings against him were well-supported."). Thus, the Court need not address the Paragraph A criteria further.

### B.      Paragraph B Criteria

To satisfy the Paragraph B criteria (which are the same for Listings 12.04 and 12.06), a claimant must have at least two marked limitations or one extreme limitation in four broad areas of mental functioning. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§12.04(B), 12.06(B). These are: (1)

understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. *Id.* The ALJ concluded that Tanya had only moderate limitations, as opposed to severe or marked limitations, in each of these areas. R. 22–24. Tanya contends that the ALJ erroneously based his assessment "primarily . . . upon his own medical hunches rather than any documented medical evidence," while simultaneously ignoring certain evidence, including Tanya's mental health records and Tanya's statements in her function report. Dkt. 18 at 6–9.

The Court disagrees. In concluding that Tanya had only moderate limitations in each of the Paragraph B criteria, the ALJ relied on the opinions of the state agency psychological consultants. *See* R. 23. At the initial level of review, on March 10, 2022, Melanie Nichols, Ph.D., found that Tanya had only moderate limitations in each of the paragraph B domains. R. 88. Approximately five months later, on August 27, 2022, Gayle Williamson, Psy.D., reached the same conclusion. R. 99. The ALJ found these physicians' opinions persuasive because they were "consistent with the record as a whole." *See* R. 23 (citing R. 86–93, 96–105). These assessments constitute substantial evidence supporting the ALJ's decision. *See Filus v Astrue*, 694 F.3d 863, 867 (7th Cir. 2012). Tanya does not point out any other physicians' contradictory medical findings, and "[b]ecause no other physician contradicted these two opinions, the ALJ did not err in accepting them." *Id.* (citations omitted); *see Thea P. v. Saul*, No. 18-cv-08058, 2020 WL 2614853, at *7–9 (N.D. Ill. May 22, 2020) (affirming the ALJ's decision that the claimant did not satisfy the Paragraph B criteria, including because "[s]tate agency reviewing physicians concluded" that the claimant did not satisfy the Listings and she "point[ed] to no contradictory opinion"); *Julie S. v. O'Malley*, No. 21-cv-04816, 2024 WL 1092683, at *3–9 (N.D. Ill Mar. 13, 2024).

Tanya contends that the ALJ "overlooked and did not assess portions of [her] mental health records"—specifically, records from the Will County Health Department & Community Health Center—"which document her inability to regulate her emotions including anger issues and tearfulness." Dkt. 18 at 8 (citing R. 873, 987, 1467, 1479). But "the ALJ is not required to mention every piece of evidence." *Combs v. Kijakazi*, 69 F.4th 428, 435 (7th Cir. 2023). Instead, the ALJ's obligation is merely to "not ignore 'an entire line of evidence that supports a finding of disability.'" *Id.* (quoting *Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010)). Here, although the ALJ did not specifically mention the Will County Health Department records, the ALJ adequately accounted for the line of evidence that Tanya contends would show she has a greater-than-moderate limitation in her ability to adapt or manage herself. *See* Dkt. 18 at 8. Specifically, the ALJ pointed to records from consultative examinations which showed that Tanya displayed depressed, saddened, and anxious moods. R. 27 (citing R. 967–73, 2292–2306).[3] The ALJ also pointed to Tanya's own statements that "she has problems getting along with family, friends, neighbors, or others"; that she "'hate[s] people telling [her] what to do or what should be done'"; and that she "does not like authority figures." R. 27 (citing R. 269, 270). That evidence goes directly to the extent of Tanya's "abilities to regulate emotions, control behavior, and maintain well-being in a work setting," which includes things like "[r]esponding to demands; adapting to changes; [and] managing your psychologically based symptoms." 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.00(E)(4). The ALJ considered

---

[3] Although the ALJ pointed to this evidence in his RFC discussion, rather than his Step 3 discussion, the Court may consider an ALJ's RFC discussion when evaluating the sufficiency of his Step 3 determination. *See Jeske v. Saul*, 955 F.3d 583, 590 (7th Cir. 2020) (explaining that "[t]he five-step evaluation process comprises sequential determinations that can involve overlapping reasoning," which "is certainly true of step three and the RFC determination that takes place between steps three and four") (internal citation omitted); *see also Zellweger v. Saul*, 984 F.3d 1251, 1254 (7th Cir. 2021) (explaining that nothing prohibits the court from reviewing the ALJ's step-three determination "in light of elaboration and analysis appearing elsewhere in the decision") (citation omitted).

this evidence and determined that Tanya had only a moderate limitation in her ability to adapt or manage herself, rather than a more severe limitation. Tanya thus has not shown that the ALJ ignored an entire line of evidence going to her ability to regulate her emotions. For that reason—and because both the ALJ's determination is consistent with the state agency psychological consultants, and Tanya does not point to any other contrary medical opinions—the ALJ did not err by failing to specifically mention the Will County Health Department records. *See Marco C. v. Colvin*, No. 22-cv-00765, 2025 WL 263574, at \*4 (N.D. Ill. Jan. 22, 2025) (holding that the ALJ did not improperly ignore an entire line of evidence when he "analyzed Plaintiff's subjective complaints of poor concentration when evaluating the relative weight to give to the opinion of Dr. Lachin," despite the fact that "the ALJ did not specifically cite to the screening questionnaires" the plaintiff cited); *see also Manuel C. v. O'Malley*, No. 20-cv-05525, 2024 WL 916226, at \*11 (N.D. Ill. Mar. 4, 2024) (concluding that the ALJ did not err in finding that the claimant "was not limited in his ability to adapt or manage oneself" because "the ALJ relied on substantial evidence" to support that finding and it was consistent with the state agency consultants' opinions, even though the ALJ did not mention the specific evidence the claimant pointed to).

The ALJ sufficiently grappled with Tanya's function report, as well. In particular, the ALJ acknowledged Tanya's statements in the December 18, 2021 Function Report that: "her condition affects her memory"; she "has problems getting along with family, friends, neighbors, or others"; "her condition affects her concentration"; and she "needs special reminders to take care of personal needs and grooming and needs help or reminders taking medicine." R. 23 (citing R. 265–72). The ALJ likewise acknowledged the evidence tending to support those statements, such as: (1) a March 2022 psychological report from Anna Stapleton, Psy.D., stating that Tanya exhibited a "saddened and anxious" mood and "congruent" affect, R. 23 (citing R. 967–73); and (2) Nurse Practitioner

Aasta Knox's notes from a June 2023 "mental visit," stating that Tanya exhibited a "depressed, anxious" mood with "congruent" affect and had paranoia. R. 23 (citing R. 2292–2306). The ALJ expressly considered these findings in determining that Tanya had no-more-than-moderate limitations in understanding, remembering, or applying information, as well as in concentrating, persisting, and maintaining pace. R. 23.

But the ALJ also properly recognized the countervailing evidence. For example, he noted that: Dr. Stapleton's March 2022 psychological report said Tanya's "short-term memory and long-term memory were intact," *see* R. 23 (citing R. 967–73); a March 2023 "progress note" from Donald Roland, M.D., documented "intact immediate, recent, and remote memory," R. 23 (citing R. 2307–2314); and Nurse Practitioner Knox's notes from the June 2023 "mental visit" showed Tanya's "memory was within normal limits," R. 23 (citing R. 2292–2306).

Based on this body of evidence—which sometimes supported and sometimes detracted from Tanya's claim—the ALJ concluded that Tanya experienced only moderate limitations in the Paragraph B criteria. That conclusion is supported by substantial evidence, and the Court will not "substitute its judgment for the ALJ's by reweighing the evidence." *Beardsley v. Colvin*, 758 F.3d 834, 836–37 (7th Cir. 2014).[4]

### C. Paragraph C Criteria

To satisfy the paragraph C criteria (which, again, are the same for Listings 12.04 and 12.06), a mental disorder must be "serious and persistent," meaning there is a medically documented history of the disorder over a period of at least two years. 20 C.F.R. Pt. 404, Subpt. P, App.

---

[4] The ALJ did not expressly analyze the Paragraph B criteria of Listing 12.06. *See* R. 19–24. However, the ALJ did analyze the Paragraph B criteria of Listings 12.04 and 12.15, which are identical to the Paragraph B criteria for Listing 12.06. The Court thus can discern the ALJ's reasoning as to Listing 12.06, and it will not discount the ALJ's analysis "simply because it appears elsewhere in the decision. To require the ALJ to repeat such a discussion throughout his decision would be redundant." *Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015).

9

1, §12.00(G)(1), (2)(a). The evidence must also show: (1) "rel[iance], on an ongoing basis, upon medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s), to diminish the symptoms and signs of [the] mental disorder"; and (2) that "despite [the claimant's] diminished symptoms and signs, [the claimant] ha[s] achieved only marginal adjustment." *Id.* §12.00(G)(2)(b), (c). "'Marginal adjustment' means that [the claimant's] adaptation to the requirements of daily life is fragile; that is, [the claimant] ha[s] minimal capacity to adapt to changes in [her] environment or to demands that are not already part of [her] daily life." *Id.* §12.00(G)(2)(c). The marginal adjustment requirement is met "when the evidence shows that changes or increased demands have led to exacerbation of your symptoms and signs and to deterioration in your functioning." *Id.* Examples of this deterioration include the need for a "significant change in medication or other treatment," or "episodes of deterioration that have required you to be hospitalized or absent from work, making it difficult for you to sustain work activity over time." *Id.*

> In analyzing the Paragraph C criteria, the ALJ stated:

> The claimant has been prescribed psychiatric medications and underwent counseling visits during the period in consideration. However, there is no evidence of a marginal adjustment or a minimal capacity to adapt to changes in the environment or to demands that are not already part of her daily life. Thus, the undersigned finds that the claimant's impairments do not meet listing 12.04(C) or 12.15(C).[5]

R. 24.

Tanya argues that "the ALJ did not provide substantial evidence to support his decision." Dkt. 18 at 10. But the ALJ's conclusion is supported by the assessments of Dr. Williams and Dr. Nicholson, both of whom stated that the "[e]vidence does not establish the presence of 'C' criteria." R. 88, 99. These assessments, again, constitute substantial evidence supporting the ALJ's decision. *See Filus*, 694 F.3d at 867. Tanya does not point out any other physicians' contradictory

---

[5] Again, the Court will not discount the ALJ's Step 3 analysis as it applies to Listing 12.06 merely because it appears in the analysis of Listings 12.04 and 12.15. *See Curvin*, 778 F.3d at 650.

medical findings, so "the ALJ did not err in accepting" Dr. Williams' and Dr. Nicholson's opinions. *Id.* (ALJ did not err in accepting the opinions of state agency physicians who concluded the claimant did not meet or medically equal any listed impairment where no other physician contradicted those opinions); *see also Victoria R. v. Kijakazi*, No. 20-cv-04444, 2022 WL 3543231, at *12 (N.D. Ill. Aug. 18, 2022) (affirming an ALJ's decision that the claimant did not satisfy Listing 12.06 when "the only mental health specialist to examine Claimant . . . did *not* diagnose her with an anxiety disorder" and "no mental health specialist diagnosed Claimant with any disorder mentioned in the listing"); *Jason V. v. Kijakazi*, No. 20-cv-04992, 2023 WL 5289369, at *6 (N.D. Ill. Aug. 17, 2023) (affirming the ALJ's "brief" Paragraph C discussion because the ALJ "relied upon the findings by the state-agency physicians who concluded that [the claimant] did not meet the Paragraph C criteria or otherwise meet or equal a Listing," and the claimant "d[id] not argue that another medical professional contradicted these opinions"), *aff'd sub nom. Vuletich v. Bisignano*, No. 23-3013, 2025 WL 1743502 (7th Cir. June 24, 2025).

The Court also disagrees with Tanya's argument that the ALJ's "three-sentence analysis on this point does not build the requisite logical bridge explaining how the ALJ came to [his Paragraph C] conclusion." Dkt. 18 at 10. True, the ALJ's analysis is brief, and Tanya cites cases where courts have remanded because of an overly perfunctory listing analysis. *See id.* at 10–11 (citing cases). However, the administrative records in those cases contained evidence that *possibly might have* shown that the plaintiffs' impairments satisfied a Listing—evidence which the ALJs in those cases ignored. *See Minnick v. Colvin*, 775 F.3d 929, 936 (7th Cir. 2015) (explaining that the ALJ's Step 3 analysis was inadequate because "the ALJ failed to acknowledge several aspects of the record that could in fact meet or equal Listing 1.04," "[m]ost notably" an MRI "showing mild to moderate mass effect on two nerve roots"); *Brindisi v. Barnhard*, 315 F.3d 783, 786 (7th Cir. 2003)

(explaining that, "[m]ost significantly, the [ALJ's] opinion fails to mention the strongest piece of evidence supporting [the plaintiff's] claim for benefits under the listing for hearing impairments—an audiogram"); *Lowe v. Saul*, No. 18-cv-00428, 2020 WL 439413, at *4 (N.D. Ind. Jan. 9, 2020) (noting that the ALJ "failed to discuss or analyze," among other things, the facts that the plaintiff "attended anywhere from five to ten [mental health] appointments a month," that "her case manager managed her doctor's appointments and ensured that she bathed," that she "suffered an anxiety attack while on a camping trip," and that she "required assistance from her case manager to make phone calls to medical providers and to complete her housing application process" in determining that the plaintiff did not meet the Paragraph C criteria of Listing 12.06), *report and recommendation adopted sub nom. Kathleen L. v. Saul*, No. 18-cv-00428, 2020 WL 439980 (N.D. Ind. Jan. 28, 2020); *Carrie K. v. O'Malley*, No. 23-cv-00769, 2024 WL 3581906, at *4, 5 (N.D. Ill. July 30, 2024) (noting that the ALJ did not discuss the plaintiff's "recurrent episodes of deterioration," hospitalizations, and medication usage in rejecting her Step 3 argument and determining she lacked "marginal adjustment," and that such evidence "is sufficient to show that Plaintiff possibly could have met the paragraph C criteria").

Here, Tanya points to two records that she believes meet Paragraph C's "marginal adjustment" requirement. One is a June 7, 2023 treatment note from Nurse Practitioner Knox, in which Tanya reported having depression, paranoia, flashbacks, and nightmares, and also endorsed social isolation. Dkt. 18 at 11 (citing R. 2301–02). The other is a June 21, 2023 treatment note from Nurse Practitioner Knox, in which Tanya reported that she "continue[d] to experience anxiety and racing thoughts" and that "the racing thoughts ha[d] been impacting her sleep." *Id.* (citing R. 2292). But Tanya has not explained how either of these records demonstrates an inability "to function outside of [her] home or a more restrictive setting, without substantial psychosocial supports" or a

12

deterioration "necessitat[ing] a significant change in medication or other treatment" or "requir[ing] [her] to be hospitalized or absent from work." 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.00(G)(2)(c). Nor does Tanya acknowledge the fact that, unlike the cases she cites, the ALJ did consider Nurse Practitioner Knox's June 2023 treatment notes, including Tanya's reports of "continued racing thoughts," as well as her "depressed, anxious mood" and "congruent affect" on exam, but ultimately concluded that the evidence failed to establish that the Paragraph C criteria were met. R. 24, 27 (citing R. 2292, 2297).[6]

In sum, Tanya has not shown that she satisfied the Paragraph C criteria. *See, e.g.*, *Acera B. v. Saul*, No. 20-cv-01674, 2021 WL 2222605, at *5 (N.D. Ill. June 2, 2021) ("To support reversal, 'a claimant is required to identify the medical evidence showing that he or she would have satisfied the Step 3 criteria if the ALJ had considered the relevant issues.'") (quoting *Heuschmidt v. Colvin*, No. 14-cv-04377, 2015 WL 7710368, at *3 (N.D. Ill. Nov. 30, 2015)); *Victoria R.*, 2022 WL 3543231, at *11 (affirming an ALJ's decision that the claimant did not satisfy Listing 12.04 when she cited "no evidence indicating that, despite these diminished symptoms, she has only achieved 'marginal adjustment'"). The ALJ's Paragraph C determination was supported by substantial evidence, and the Court will not disturb it. *See Warnell*, 94 F.4th at 1052 (reviewing courts are not permitted to reweigh evidence); *Zellweger v. Saul*, 984 F.3d 1251, 1255 (7th Cir. 2021) (finding that the ALJ did not err at step three where the RFC analysis supported the ALJ's determination that the plaintiff did not meet the Listing at issue).

For all of these reasons, the ALJ reasonably concluded that Tanya failed to satisfy her burden of showing that her mental impairments met or equaled a listed impairment. *See*

---

[6] It is immaterial that the ALJ discussed Nurse Practitioner Knox's treatment notes within the RFC analysis because the Court may consider that analysis in assessing the ALJ's Step 3 determination. *See Jeske*, 955 F.3d at 590; *Zellweger*, 984 F.3d at 1254.

*Richardson*, 2023 WL 4103000, at *2 (claimant has the burden of offering evidence that they meet a Listing). "Substantial evidence is not a high hurdle to clear—it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bruno v. Saul*, 817 F. App'x 238, 241 (7th Cir. 2020) (quoting *Biestek*, 587 U.S. at 102). Here, the ALJ's listing analysis satisfies this threshold, and Tanya's request to reverse or remand the case for further consideration of this issue is denied.

### III.    The ALJ's RFC Determination

Tanya next challenges the ALJ's determination of her RFC. A claimant's RFC represents the maximum she can do despite her limitations. 20 C.F.R. §404.1545(a)(1); SSR 96–8p, 1996 WL 374184, at *1 (July 2, 1996). An ALJ must base his determination of a claimant's RFC on all relevant evidence in the record, including the claimant's medical history and findings, the effects of treatment, reports of daily activities, and medical opinions. 20 C.F.R. §404.1545(a)(3); SSR 96–8p, 1996 WL 374184, at *5. When determining a claimant's RFC, an ALJ must consider all medically determinable impairments, including those that are not severe. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008). An ALJ must also consider all the effects and limitations resulting from those impairments. *See Thomas v. Colvin*, 745 F.3d 802, 807 (7th Cir. 2014) ("When determining an individual's RFC, the ALJ must consider all limitations that arise from medically determinable impairments."); *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009) ("An ALJ must consider the combined effects of all of the claimant's impairments, even those that would not be considered severe in isolation.").

The ALJ determined that Tanya retained the RFC to perform light work, as defined in 20 C.F.R. §416.967(b), with the following limitations:

> She can lift/carry 20 pounds occasionally and 10 pounds frequently. She can stand for 6 hours in an 8-hour workday. She can walk for 8 hours. She can sit for 6 hours. She can push/pull as much as she can lift/carry. She can perform frequent reaching

> overhead to the left. For all other reaching, she can reach frequently to the left. She can occasionally stoop, kneel, crouch, or crawl. She can never work in extreme heat. She is able to perform simple, routine tasks and simple work-related decisions. She is able to occasionally interact with supervisors, coworkers, and the public.

R. 24. Tanya contends that in crafting this RFC, the ALJ improperly discounted the opinion of Dr. Lopez, who recommended only a five-pound lifting and carrying restriction; gave too little attention to her pain complaints; and gave too much attention to her decision to stop taking prescribed medication. The Court addresses each argument in turn.

### A.     Dr. Lopez's Opinion

First, Tanya contends that the ALJ improperly "discount[ed] the opinion" of William Lopez, M.D., the initial state agency examining physician who opined that Tanya was only "able to lift, carry, push, and pull objects up to 5 pounds." Dkt. 18 at 12 (citing R. 29–30); R. 978. For cases filed after March 17, 2017 (like this one), an ALJ "will consider the following factors when [he] consider[s] the medical opinion(s)": (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant; (4) specialization; and (5) other factors. 20 C.F.R. §404.1520c(c)(1)–(5). The first two factors (supportability and consistency) are "the most important factors," and the ALJ must account for those factors in his decision. *Id.* §404.1520c(b)(2); *Bakke v. Kijakazi*, 62 F.4th 1061, 1067 (7th Cir. 2023). The ALJ may, but need not, explain the remaining three factors. 20 C.F.R. § 404.1520c(b)(2). "Supportability measures how much the objective medical evidence and supporting explanations presented by a medical source support the opinion." *Michelle D. v. Kijakazi*, No. 21 C 1561, 2022 WL 972280, at *4 (N.D. Ill. March 31, 2022) (citing 20 C.F.R. §404.1520c(c)(1)). "Consistency assesses how a medical opinion squares with other evidence in the record." *Id.* (citing 20 C.F.R. §404.1520c(c)(2)).

Here, the ALJ found Dr. Lopez's suggested five-pound weight restriction to be unpersuasive because "it is inconsistent with the medical evidence." R. 29. The ALJ pointed to Dr. Lopez's

findings that Tanya's "grip strength was 5/5 in both hands"; she "had normal ability to grasp and manipulate objects"; she "was able to fully extend the hands, make fists, and oppose the fingers"; and, most notably, she "had full (5/5) motor strength in all limbs." R. 29–30 (citing Dr. Lopez's report at R. 974–80). The Court finds no error in this assessment. An extreme five-pound weight restriction is not supported by, and is inconsistent with, Dr. Lopez's own findings for the reasons noted by the ALJ. It also is inconsistent with other of Dr. Lopez's other findings, such as his finding that Tanya had "no deformities, bruises or ulcerations" or "clubbing, edema or cyanosis" in any of her extremities; and that her range of motion of the left shoulder was only "mildly limited" and her "range of motion of the right shoulder, elbows, and wrists was normal." R. 977; *see Pavlicek v. Saul*, 994 F.3d 777, 781 (7th Cir. 2021) (recognizing that an ALJ may decline to credit a physician's opinion when it "is inconsistent with the physician's treatment notes"); *Henderson v. Kijakazi*, No. 22-cv-03890, 2023 WL 6388143, at *7 (N.D. Ill. Sept. 29, 2023) (finding that the ALJ's supportability and consistency determination was adequate when "[t]he ALJ articulated she found Dr. Childers' MIQ unpersuasive due to the lack of support and consistency with her treatment notes and the record," and also "holistically reviewed [the claimant's] treatment history and the record evidence").

Tanya argues that "there is a difference between manual dexterity and the manipulation of the hands and the ability to carry, push, and pull objects." Dkt. 18 at 12; *see also* Dkt. 24 at 3, 6 (arguing that the ALJ "failed to draw the connection between grip strength and the ability to lift," and that grip strength "is not determinative of lifting ability"). But the ALJ also pointed to Dr. Lopez's finding that Tanya had "full (5/5) motor strength in all limbs," R. 29–30, which, along with the ability to grip, does go directly to a person's ability to lift and carry. *See, e.g.*, 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.00(D)(2)(c) (recognizing, for example, that a loss of function in

upper extremities "very seriously limits your ability to independently initiate, sustain, and complete work-related activities involving . . . gross motor movements . . . such as handling, gripping, grasping, holding, turning, and reaching; or not being able to engage in exertional movements such a lifting, carrying, pushing, and pulling"). Tanya also argues that her "mild limitation in getting on and off the exam table, squatting and rising, and hopping on one leg" support the five-pound weight restriction. Dkt. 24 at 6. But it is unclear how Tanya's limitations in those areas bear on her ability to lift, carry, push or pull, and she offers no case law supporting her position.

The ALJ's 20- and 10-pound weight restriction is further supported by the ALJ's review of the opinions of the first- and second-level state agency reviewers. The ALJ considered the opinion of the first-level state agency reviewer, Vittal Chapa, M.D. *See* R. 28–29. Dr. Chapa examined the evidence (including Dr. Lopez's report) and opined that Tanya could perform medium work, including lifting or carrying 50 pounds occasionally and 25 pounds frequently. R. 89–90. The ALJ explained, however, that he found this opinion "unpersuasive because it does not account for the abnormal clinical findings of [Tanya's] cervical and lumbar spine and left shoulder." R. 28–29 (citing R. 908–09, 1059–60, 2311).

The ALJ also considered the opinion of the second-level state agency reviewer, James Madison, M.D. *See* R. 28–29. Dr. Madison examined the evidence (again, including Dr. Lopez's report) and opined that Tanya had "the residual functional capacity for light work with occasional stooping, kneeling, crouching, or crawling," and that she was "limited with the use of the left shoulder for reaching in all directions including overhead to frequent." R. 29 (citing R. 96–105). The ALJ explained that he found this opinion "persuasive because it is supported by objective evidence presented by the State agency medical consultant that was deemed relevant including the claimant's MRIs and decreased range of motion of the left shoulder at the consultative

17

examination." R. 29. The ALJ thus reached an RFC determination that (as to this specific issue) is consistent with Dr. Madison's opinion: that Tanya can perform light work, with the limitation that "[s]he can lift/carry 20 pounds occasionally and 10 pounds frequently." R. 24.

Tanya does not argue that Dr. Madison's opinion was flawed or incorrect. She only argues that the ALJ should have opted for Dr. Lopez's five-pound weight restriction instead of Dr. Madison's 20- and 10-pound restriction. *See* Dkt. 18 at 21–13; Dkt. 24 at 3–8. But the ALJ "need only 'minimally articulate' his consideration of each opinion." *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000). The ALJ did so here with respect to each opinion when: he explained that he found Dr. Madison's opinion persuasive because Dr. Madison's lifting restriction was consistent with the medical evidence, including Tanya's MRIs and range of motion in her left shoulder, *see* R. 29; he found Dr. Lopez's opinion unpersuasive because Dr. Lopez's lifting restriction was inconsistent with his own examination findings, *see* R. 29–30; and he found Dr. Chapa's opinion unpersuasive because it did not account for abnormal clinical findings relating to Tanya's cervical and lumbar spine and left shoulder, *see* R. 28–29. Indeed, the fact that the ALJ's RFC determination was "more limiting" than Dr. Chapa's recommendation "illustrat[es] reasoned consideration given to the evidence." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). The ALJ thus satisfied his obligation to "provide a valid explanation for preferring the record reviewer's analysis over that of the agency's examining doctor." *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014); *see also Wilson v. Berryhill*, 737 F. App'x 286, 290 (7th Cir. 2018) (recognizing that "[a]n ALJ has substantial discretion regarding which doctor to believe"); *Dixon v. Massanari*, 270 F.3d 1171,

1178 (7th Cir. 2001) ("When treating and consulting physicians present conflicting evidence, the ALJ may decide whom to believe, so long as substantial evidence supports that decision.").[7]

## B.       Tanya's Complaints of Pain

Tanya next challenges the ALJ's RFC determination on the ground that he gave "short shrift to [her] complaints of pain," including ignoring certain statements in the notes of Dr. Roland and Dr. Stapleton; failing to assess records from the Branagan Chiropractic Center and the Pain Centers of Chicago; and discounting Tanya's statements based on her function report and otherwise "not thoroughly analyz[ing]" her testimony. Dkt. 18 at 13–14.

When analyzing an ALJ's determination of a Social Security claimant's credibility, the Seventh Circuit has held:

> Subjective statements by claimants as to pain or other symptoms are not alone conclusive evidence of disability and must be supported by other objective evidence. 42 U.S.C. § 423(d)(5)(A). The regulations instruct ALJs to consider a number of factors, including: (1) relevant medical evidence, including intensity and limiting effects of symptoms, 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2); (2) treatment and efficacy, *id.* §§ 404.1529(c)(3)(iv)–(v), 416.929(c)(3)(iv)–(v); (3) return to gainful activity, *id.* §§ 404.1571, 416.471; (4) work during disability period, *id.*; (5) daily activities, *id.* §§ 404.1529(c)(3)(i), 416.929(c)(3)(i); and (6) statements inconsistent with the record, *id.* §§ 404.1529(c)(4), 416.929(c)(4). An ALJ need not discuss every detail in the record as it relates to every factor. *Gedatus*, 994 F.3d at 903. Summaries of medical evidence, while definitionally "partial and selective," are appropriate. *Id.* at 901. Still, although ALJs do not need to address every piece of evidence in the record, an ALJ may not ignore an entire line of evidence contrary to its ruling. *Reinaas v. Saul*, 953 F.3d 461, 467 (7th Cir. 2020). As long as an ALJ gives specific reasons supported by the record, we will not overturn a credibility

---

[7] Tanya also argues that "[i]f the ALJ had given Dr. Lopez's opinion greater weight, Tanya's condition would been recognized as a listed impairment, and she would have been found disabled at step three." Dkt. 18 at 13. But she does not identify which Listing(s) she believes she could have met, nor does she describe how Dr. Lopez's opinion, if fully credited, shows that she meets or medical equals the criteria of any Listing. She also does not press this apparent Step 3 argument in her reply brief. Accordingly, the Court finds this argument to be so underdeveloped that it is waived. *See I.H. v. Colvin*, No. 12-cv-09173, 2014 WL 114173, at *11 (N.D. Ill. Jan. 10, 2014) (rejecting underdeveloped arguments in a Social Security appeal). And even if not waived, the ALJ's decision to discount Dr. Lopez's opinion and credit Dr. Madison's opinion instead is justified for the reasons discussed above.

determination unless it is patently wrong. *Deborah M. v. Saul*, 994 F.3d 785, 789 (7th Cir. 2021).

*Grotts v. Kijakazi*, 27 F.4th 1273, 1278–79 (7th Cir. 2022).

Here, the ALJ found that Tanya's medically determinable impairments "could reasonably be expected to cause the alleged symptoms," but that Tanya's statements "concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." R. 28. The ALJ pointed to medical evidence showing that Tanya had "abnormal clinical findings of [her] cervical and lumbar spine and left shoulder" as supportive of Tanya's assertions that she had trouble reaching, lifting, standing, and sitting. R. 28 (citing R. 882–921, 1051–65, 2307–14). But the ALJ also pointed to "many physical examinations" that showed Tanya had "normal motor strength to the upper and lower extremities and intact gait," normal or full ability to grip, grasp, and manipulate objects, and full motor strength in all limbs. R. 28 (citing R. 702–827, 882–921, 974–80, 1529–88, 1589–1647). The ALJ also pointed to records showing that Tanya "reported effectiveness from medication" in managing her pain. R. 28 (citing 925–66, 2307–14). So the ALJ fulfilled his objection to give "specific reasons supported by the record," and this Court also does not find that the ALJ was "patently wrong" when he concluded that Tanya's asserted pain, while supported, was not as intense, persistent, or limiting as Tanya claimed. *Grotts*, 27 F.4th at 1279; *see Pufahl v. Bisignano*, 142 F.4th 446, 458–59 (7th Cir. 2025) ("The ALJ thoroughly explained how [the claimant's] statements often conflicted with medical evidence documenting her physical and mental abilities. He also noted effective treatments for many of her impairments and her ability to partake in some daily activities. These reasons, accompanied by specific record evidence the ALJ highlighted in his decision, provide sufficient support for the decision to discount [the claimant's] subjective reports of her symptoms.").

20

Moreover, the ALJ *did* acknowledge Tanya's complaints of pain. In fact, the ALJ wrote seven paragraphs, with record cites, setting forth Tanya's assertions of pain and the objective and subjective evidence supporting those assertions, as well as the medications and medical procedures Tanya underwent to ameliorate that pain. *See* R. 25–26 (citing R. 256, 300–03, 704, 710, 885, 908–09, 917, 929, 932, 977, 1059–60, 1319, 2205, 2311). Tanya is correct that the ALJ did not cite to the records from the Branagan Chiropractic Center or the Pain Centers of Chicago. But the ALJ otherwise acknowledged the assertions that those documents were offered to support. *Compare* Dkt. 18 at 13 (Tanya's argument that the Pain Centers of Chicago Records would show that "Tanya reported that her pain levels on the days of the exams were 6 out of 10, and the severity of her pain at worst was 9 out of 10"), *with* R. 25 (ALJ opinion stating that Tanya "reported daily pain," that "she testified to back/spine problems," and that she "reported pain at a '6' on a 10-pain level"). Review of Social Security decisions "is all about substance and not form." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024).

"An ALJ need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Id.* In sum, the ALJ here sufficiently acknowledged and incorporated Tanya's pain complaints into the RFC determination.

### C.    Tanya's Decision to Stop Taking a Certain Psychiatric Medication

Finally, Tanya faults the ALJ for noting that she chose to stop taking Depakote, a psychiatric medication. Dkt. 18 at 14–15; *see* R. 28. At the administrative hearing, Tanya testified that she stopped taking Depakote because it "made me so incredibly tired. I mean, I was like a zombie, and I told [the prescriber], I don't like the way I feel taking these." R. 62. Tanya argues that the ALJ impermissibly failed to acknowledge this explanation, even though "[t]he Agency's own rules

acknowledge that '[a]n individual may not agree to take prescription medications because the side effects are less tolerable than the symptoms.'" Dkt. 18 at 14 (quoting SSR 16-3p).

While it is true that the ALJ did not discuss Tanya's reasons for stopping Depakote, Tanya does not directly explain or argue what effect she believes this had on the ALJ's RFC determination. Tanya appears to suggest that the ALJ improperly concluded that her decision not to take Depakote means she either does not have the mental impairments that that medication is intended to treat, or that her assertion of mental impairments was not credible. *See* Dkt. 18 at 14–15. But the ALJ did not say or find either of those things. *See* R. 24–30. And in all events, the Court cannot tell how this adversely affected Tanya. The ALJ's mental RFC limited Tanya to "simple, routine tasks and simple work-related decisions," and "occasional[] interact[ion] with supervisors, coworkers, and the public." R. 24. Those limitations are consistent with—and in some ways are *greater than*—the limitations recommended by the state agency psychological consultants, both of whom opined that Tanya is capable of "simple, routine tasks and simple work-related decisions" and "*routine* superficial contact with co-workers and supervisors." R. 29 (emphasis added) (citing R. 91, 103). The ALJ found the consultants' opinions as to routine interactions unpersuasive because they "d[id] not account for [Tanya's] problems in the social interactions and social relationships domain," R. 29, so he limited Tanya to only occasional interactions instead, R. 24. Regardless of the fact that the ALJ mentioned that Tanya stopped taking Depakote, he clearly believed that Tanya's "problems in the social interactions and social relationships domain" were genuine and significant enough to warrant greater restrictions than recommended by any other physician of record. *See Deborah M. v. Saul*, 994 F.3d 785, 790 (7th Cir. 2021) (declining to remand because "even if the ALJ's consideration of Plaintiff's lack of treatment were wrong, Plaintiff has not shown that it caused any harm"). Tanya also has not pointed to any medical opinion in the record

recommending greater restrictions than what the ALJ imposed. *Hosea M. v. Saul*, No. 18-cv-02926, 2019 WL 5682835, at *7 (N.D. Ill. Nov. 1, 2019) ("[C]ourts within this Circuit have repeatedly held that '[t]here is no error' in the formulation of an RFC 'when there is no doctor's opinion contained in the record [that] indicates greater limitations than those found by the ALJ.'") (quoting *Best v. Berryhill,* 730 F. App'x 380, 382 (7th Cir. 2018)).

Thus, for all of the reasons above, Tanya fails to show any reversible error in the ALJ's RFC determination.

## IV. The ALJ's Step 5 Determination

Tanya last challenges the ALJ's Step 5 determination. At Step 5, the ALJ is required to consider "whether the claimant is unable to perform any other work in the national economy given his age, education, and work experience." *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021). "If [the claimant] can make an adjustment to other work," the Social Security Administration "will find that [the claimant] [is] not disabled. If [the claimant] cannot make an adjustment to other work, [the Administration] will find that [the claimant] [is] disabled." 20 C.F.R. §416.920(a)(4).

Tanya argues that the ALJ erred by failing to pose hypothetical questions to the vocational expert that included the five-pound weight restriction recommended by Dr. Lopez. *See* Dkt. 18 at 14–15. "Ordinarily, a hypothetical question to the [vocational expert] must include all limitations supported by the medical evidence to ensure that the [expert] understands the full extent of the limitations in matching the hypothetical RFC to available jobs." *French v. Colvin*, No. 14-cv-10240, 2016 WL 4798924, at *8 (N.D. Ill. Sept. 14, 2016) (citing *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002)). But "the ALJ is required only to incorporate into his hypotheticals those impairments and limitations that he accepts as credible" and supported by the medical record. *Schmidt v. Astrue*, 496 F.3d 833, 846 (7th Cir. 2007); *Deborah M.*, 994 F.3d at 791. Here, the ALJ posed hypothetical questions to the vocational expert that mirrored his RFC determination—

23

meaning that Tanya could perform light work, but was restricted to lifting and carrying 20 pounds occasionally and ten pounds frequently. *See* R. 71–78. For the reasons explained above, that restriction is supported by substantial evidence, and Tanya has not shown that the five-pound restriction is supported by the medical record and thus needed to be included in the ALJ's RFC determination. Accordingly, the ALJ did not err by not including the five-pound weight restriction in his hypotheticals to the vocational expert. *See Deborah M.*, 994 F.3d at 791 (affirming the ALJ's decision to omit certain limitations in her hypotheticals to the vocational expert because "she determined that they were not supported by the medical record"); *see also Deborah H. v. Kijakazi*, No. 21-cv-01195, 2023 WL 2743549, at *9 n.6 (S.D. Ill. Mar. 31, 2023) ("Plaintiff's [Step 5] objection simply repeats her challenge to the RFC. Accordingly, the Court need not address it separately.").

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Reverse the Final Decision of the Commissioner of Social Security (Dkt. 17) is DENIED, and the Commissioner's request to affirm (Dkt. 23 at 1) is GRANTED. The Commissioner's decision is affirmed.


SO ORDERED.


DATED: March 24, 2026

HON. BETH W. JANTZ
U.S. Magistrate Judge

24